UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES A. BOYD, | ) |
|     Plaintiff, | ) CASE NO. C06-360-MJP-JPD |
| v. | ) |
| DR. MARC STERN, *et al.*, | ) REPORT AND RECOMMENDATION |
|     Defendants. | ) |

## INTRODUCTION AND SUMMARY CONCLUSION

This is a *pro se* civil rights action under 42 U.S.C. § 1983. Plaintiff is a state prisoner who is currently being housed by the Washington Department of Corrections at the Washington State Reformatory. He alleges in his civil rights complaint that defendants have denied him necessary treatment for his Hepatitis C in violation of his right to be free from cruel and unusual punishment and his right to equal protection. Plaintiff also appears to allege that defendants' conduct has violated his rights under state law and under the Civil Rights of Institutionalized Persons Act.

Plaintiff names as defendants in this action four members of the Washington Department of Corrections' Hepatitis C Care Review Committee: Marc Stern, M.D.; Muhammad Aijaz Khurshid, M.D; Karen Saylor, M.D.; and, Dave Kenney, M.D. Plaintiff also names as defendants the Secretary of the Washington Department of Corrections, Harold Clarke, and former Superintendent

REPORT AND RECOMMENDATION
PAGE - 1

1  of the Washington State Reformatory, James Spalding.  Plaintiff seeks declaratory relief, monetary
2  damages, and injunctive relief in the form of the treatment he believes is necessary for his Hepatitis
3  C.
4        Defendants have filed a motion for summary judgment and plaintiff has filed a response
5  thereto.[1]  Defendants have filed a reply brief in support of their summary judgment motion, and
6  plaintiff has filed an objection and response to defendants' reply brief.[2]  The Court, having now
7  considered defendants' motion for summary judgment, and the briefs of the parties, concludes that
8  defendants' motion for summary judgment should be granted and that plaintiff's complaint, and this
9  action, should be dismissed with prejudice.

## FACTS

11        Plaintiff James A. Boyd entered into the custody of the Washington State Department of
12  Corrections ("DOC") on October 16, 1992, after being transferred to this jurisdiction from the
13  Kansas Department of Corrections ("KDOC") under an agreement entered into in accordance with
14  the Interstate Corrections Compact, RCW 72.74.010, *et seq*.  (Dkt. No. 33, Ex. 1.)  Plaintiff was
15  diagnosed with Hepatitis C ("HCV") in 1994.  (*Id*., Ex. 2 at 2.)  At that time there was no treatment
16  for HCV approved by either the Federal Drug Administration or the DOC.

---

[1] Shortly after defendants filed their motion for summary judgment, plaintiff filed a motion under Fed. R. Civ. P. 56(f) to continue the summary judgment motion pending this Court's ruling on two of his discovery motions.  Rulings were subsequently issued on those motions, and plaintiff had an opportunity to file a response to defendants' summary judgment motion.  Plaintiff's motion to continue (Dkt. No. 36) is therefore STRICKEN as moot.

Also pending is plaintiff's motion to file excess pages in his brief in opposition to defendants' summary judgment motion.  Plaintiff's brief does not exceed the 24-page limitation set forth in Local Rule CR 7(e)(3) and, thus, that motion (Dkt. No. 47) is also STRICKEN.

[2] This filing by plaintiff is not one which is contemplated by the rules of this Court.  Accordingly, the contents of plaintiff's response to defendants' reply has not been considered by this Court in rendering its ruling on defendants' summary judgment motion.

REPORT AND RECOMMENDATION
PAGE - 2

1    The DOC initiated a treatment program for HCV in late 1999, and plaintiff was approved by
2 the DOC for treatment with pegylated interferon and ribavirin. (Dkt. No. 33, Ex. 2 at 2.) However,
3 because plaintiff was confined in Washington pursuant to the Interstate Corrections Compact, the
4 KDOC was responsible for plaintiff's extraordinary medical expenses. *See* RCW
5 72.74.020(3)(a)(ii). Application was therefore made to the KDOC to approve the treatment
6 proposed by the DOC. (Dkt. No. 33, Ex. 2 at 3.) The KDOC denied treatment with pegylated
7 interferon and ribavirin, but approved treatment with non-pegylated interferon and ribavirin. (*Id.*)
8    Plaintiff was started on the treatment approved by the KDOC on December 30, 2001. (*Id.*)
9 Plaintiff's treatment was discontinued temporarily on March 16, 2002, when plaintiff was placed in
10 segregation and difficulties arose with respect to providing adequate monitoring of the treatment.
11 (*Id.*) Plaintiff's treatment was started again on May 3, 2002, and he received treatment until
12 October 21, 2002. (*Id.*) At the conclusion of plaintiff's treatment, lab tests were performed which
13 indicated that plaintiff still had HCV remaining. (*Id.*, Ex. 2 at 4.) Plaintiff was therefore classified
14 as a "non-responder" or "slow responder." (*Id.*)
15    Plaintiff's case was discussed at a meeting of the Hepatitis C Care Review Committee
16 ("CRC") on August 12, 2004. (Dkt. No. 33, Ex. 2 at 2.) The Hepatitis C CRC oversees treatment
17 of Hepatitis C for DOC inmates. The CRC discusses treatment protocols, reviews cases for
18 treatment which falls outside protocol guidelines, and provides a forum for DOC practitioners to
19 discuss issues surrounding the treatment of Hepatitis C. (Dkt. No. 33, Ex. 2 at 1.) The Hepatitis C
20 CRC evaluates previously treated patients on a case-by-case basis and will recommend re-treatment
21 only if the likelihood of success of a certain course of treatment outweighs the potential risks
22 involved. (*Id.*, Ex. 2 at 4.) Factors which are considered by the CRC during its evaluation include
23 past treatment history, medical history, results of physical and laboratory examinations, and current
24 research findings. (*Id.*) Defendants Kenney, Khurshid, Stern, and Saylor were all members of the
25 Hepatitis C CRC at times relevant to this action. (*See id.*, Ex. 2 at 2.) However, only defendants
26 Kenney and Khurshid were present at the August 12, 2004, meeting at which plaintiff's case was

REPORT AND RECOMMENDATION
PAGE - 3

1  discussed.  (*Id.*)

2      At that meeting, defendants Kenney and Khurshid recommended that plaintiff not be

3  approved for treatment with pegylated interferon and ribavirin.  (Dkt. No. 33, Ex. 2 at 2, Ex. 3 at 2.)

4  According to defendants, this decision was based on the facts that plaintiff was unlikely to respond

5  to re-treatment, that there was a potential for serious negative side effects, and that plaintiff's

6  condition is slowly progressive and not life-threatening.  (Dkt. No. 33, Ex. 2 at 7, Ex. 3 at 3.)

## DISCUSSION

### Summary Judgment

9      Summary judgment is appropriate when, viewing the evidence in the light most favorable to

10  the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving

11  party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is a fact

12  relevant to the outcome of the pending action.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

13  248 (1986).  Genuine issues of material fact are those for which the evidence is such that "a

14  reasonable jury could return a verdict for the nonmoving party." *Id*.

15      In response to a properly supported summary judgment motion, the nonmoving party may not

16  rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a

17  genuine issue of fact for trial, and produce evidence sufficient to establish the existence of the

18  elements essential to his case.  *See* Fed. R. Civ. P. 56(e).  A mere scintilla of evidence is insufficient to

19  create a factual dispute.  *See Anderson*, 477 U.S. at 252.

### Eighth Amendment Claim

21      Plaintiff alleges in his § 1983 civil rights complaint that defendants are violating his rights

22  under the Eighth Amendment by denying him re-treatment with pegylated interferon and ribavirin.

23  Section 1983 requires a claimant to prove (1) that a person acting under color of state law (2)

24  committed an act that deprived the claimant of some right, privilege, or immunity protected by the

25  Constitution or laws of the United States.  *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988).

26  There is no dispute here that the defendants acted under color of state law.  The sole issue is whether

REPORT AND RECOMMENDATION
PAGE - 4

the defendants' conduct deprived plaintiff of a federally protected right.

The Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This duty includes ensuring that inmates receive adequate medical care. *Id*. In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component. The Eighth Amendment standard requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. at 834.

The objective component of an Eighth Amendment claim is "contextual and responsive to 'contemporary standards of decency,'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. at 834. Plaintiff fails to meet either prong of the Eighth Amendment test.

Defendant Kenney, in a declaration offered in support of defendants' summary judgment motion, details the scientific evidence relied upon by the CRC in making the decision to deny plaintiff re-treatment with pegylated interferon and ribavirin after he failed to respond to treatment with non-pegylated interferon and ribavirin. (*See* Dkt. No. 33, Ex. 2.) According to defendant Kenney, a study conducted by the National Institutes of Health regarding the safety and efficacy of re-treatment of non-responders with pegylated interferon and ribavirin showed that the likelihood that such re-treatment would be successful was only 18%. (*Id*., Ex. 2 at 4.)

Defendant Kenney also cites to a number of other factors which affect the likelihood of successful re-treatment.[3] First, patients with genotype 1 HCV have a 14% likelihood of success with re-treatment as opposed to a 65% likelihood of success for patients with non-genotype 1 HCV. (*Id*.,

---

[3] Success, in this context, is defined as a sustained virologic response (SVR) which occurs if HCV is not detected at least 24 weeks after the cessation of therapy. (*See* Dkt. No. 33, Ex. 2 at 3.)

REPORT AND RECOMMENDATION
PAGE - 5

Ex. 2 at 5.) Plaintiff has genotype 1 HCV. (Dkt. No. 33, Ex. 2 at 5.) Second, patients who show an early virilogic response to the initial treatment have a 34% likelihood of success with re-treatment as opposed to patients who experience no early virilogic response who have only a 1% likelihood of success with re-treatment. (*Id*.) Plaintiff had no early virilogic response to his initial treatment. (*Id*.) Third, African American patients have a 6% likelihood of success with re-treatment, while Caucasian patients have a 20% likelihood of success with re-treatment. (*Id*.) Plaintiff is African American. (*Id*.) And, fourth, patients who were previously treated with a combination therapy, such as interferon and ribavirin, have a 12% likelihood of success with re-treatment, while patients previously treated with monotherapy have a 28% likelihood of success with re-treatment. (*Id*.) Plaintiff was originally treated with combination therapy. (*Id*.)

In addition to these factors which diminish the likelihood of success in re-treatment, defendant Kenney states that there are a number of risks associated with any treatment with interferon including flu-like symptoms, bone marrow suppression, depression, stimulation of pre-exiting auto-immune or immune mediated inflammatory diseases, and auto-immune thyroiditis which results in hypothryroidism. (*Id*., Ex. 2 at 5-6.) Defendant Kenney also identifies a number of systemic adverse events associated with the treatment including fatigue, asthenia, loss of hair, stomach upset, and altered vision. (*Id*., Ex. 2 at 6.) In addition, defendant Kenney identifies a number of risks associated with combination therapy involving ribavirin including hemolytic anemia, low white cell count, rash, itching, dyspepsia, cough, sore throat, sinusitis, and increased frequency of gout attacks. (*Id*.)

According to defendant Kenney, the major health risk in patients with untreated chronic HCV is development of cirrhosis of the liver. (*Id*.) Defendant Kenney states that approximately 5% to 25% of patients with chronic HCV may develop cirrhosis within 25 to 30 years. (*Id*.) Cirrhosis is a slowly progressive condition and is not an inevitably life threatening condition. (*Id*.) Cirrhosis changes the way the liver functions, but many people can compensate for the disease and function well with general medical treatment. (*Id*.) Only a small number of patients diagnosed with cirrhosis

will develop decompensated cirrhosis which is the state where medical treatment is no longer effective and transplant or death are the potential outcomes. (Dkt. No. 33, Ex. 2 at 7.) Plaintiff has not been diagnosed with cirrhosis. (*Id*.)

Plaintiff, following a September 5, 2001, liver biopsy was diagnosed with what defendants identify as "relatively low-grad fibrosis." (*Id*.) Defendants assert that plaintiff's minimal fibrosis is "a good prognostic indicator, as it infers that his liver is still functioning and likely only very slowly progressing to a point where aggressive treatment may become necessary." (*Id*)

By way of summary, defendant Kenney states that plaintiff is unlikely to respond to re-treatment, that there is a potential for serious negative side effects, and that plaintiff's condition, though slowly progressive, is not life-threatening. (*Id*.) Defendant Kenney also notes that "[t]reatment with available agents at this point may prejudice the patient against future reliable treatment." (*Id*.)

Plaintiff, in conjunction with his response to defendants' summary judgment motion, has provided the Court with a pathology report from his September 2001 liver biopsy which indicates that he had moderate inflammation and fibrosis, no evidence of cirrhosis, and no hepatocellular iron at that time. (Dkt. No. 48, Ex. 9.) Plaintiff has also provided laboratory reports from June 2004 blood tests which he asserts show that the hepatocellular iron in his blood increased substantially between September 2001 and June 2004. (*See id*., Exs. 9, 10 and 11.) Plaintiff appears to argue that these test results demonstrate that his liver deteriorated excessively with hepatocellular iron because defendants denied him re-treatment with pegylated interferon and ribavirin. However, plaintiff provides no evidence to suggest that there is a causitive connection between these events.[4]

In addition to his laboratory results, plaintiff has also provided a clinical report, from an unidentified source, which discusses the benefits of treatment of patients with advanced fibrosis or

---

[4] Moreover, the deterioration which plaintiff references appears to cover a time period during which he was receiving his original treatment and which preceded defendants decision to deny him re-treatment.

REPORT AND RECOMMENDATION
PAGE - 7

cirrhosis attributable to Chronic Hepatitis C with a monotherapy involving pegylated interferon. (*Id.*, Ex. 12.) The Court notes, with respect to this report, that while it discusses various forms of treatment with pegylated interferon, it does not appear to discuss the particular treatment denied to plaintiff.[5] (Dkt. No. 48, Ex. 12.) Moreover, to the extent the report suggests that treatment with pegylated interferon may benefit certain Chronic Hepatits C patients by improving their inflammatory grade and/or fibrosis stage, two of the three main predictors for improvement are the same as those identified by defendants for the combination therapy denied to plaintiff; *i.e.*, early virilogic response and non-genotype 1 HCV. (*See id.*)  As noted above, plaintiff had no early virilogic response and he has genotype 1 HCV.

Finally, plaintiff has provided a copy of his medical records, which appear to be dated March 16, 2006, which he asserts reflect that his treating physician, Dr. Reza Dehkordi, believes plaintiff to be a good candidate for re-treatment with pegylated interferon and ribavirin. (*Id.*, Ex. 13.) The handwriting on these records is exceptionally difficult to read. While there does appear to be some reference to plaintiff being a candidate for re-treatment with combination drugs, it is not clear that this constitutes a recommendation on the part of Dr. Dehkordi. (*Id.*) In addition, there is no indication that Dr. Dehkordi referred the matter back to the Hepatitis C CRC for reconsideration of the issue of whether plaintiff should now receive the treatment he was denied in 2004. Assuming that Dr. Dehkordi did believe plaintiff to be a candidate for re-treatment, differing opinions on medical treatment do not amount to a violation under the Eighth Amendment. See *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

This Court is satisfied, based upon its review of the record, that defendants' decision to deny plaintiff treatment for his HCV in August 2004, was based upon current scientific evidence and upon the fact that, given the combination of factors presented by plaintiff's case, the potential risks of re-treatment outweighed the potential benefits. Plaintiff simply offers no evidence to establish

---

[5] The report discusses monotherapies involving pegylated interferon and plaintiff was denied a combination therapy.

REPORT AND RECOMMENDATION
PAGE - 8

that defendants' alleged wrongdoing was objectively harmful enough to establish a constitutional violation.

While the Court need not address the subjective component of the test given its conclusion with respect to the objective component, the Court will nonetheless complete the analysis. The subject component requires a showing that defendants have been deliberately indifferent to his serious medical needs. The record is devoid of any evidence that defendant Kenney or defendant Khurshid, the only two defendants who were involved in making the decision to deny plaintiff re-treatment, demonstrated deliberate indifference to plaintiff's serious medical needs. As noted above, the record establishes that the decision to deny plaintiff treatment was based upon available scientific evidence and application of that scientific data to the specific circumstances of plaintiff's case.

As plaintiff fails to demonstrate that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, or that defendants' acted with a sufficiently culpable state of mind, defendants are entitled to summary judgment with respect to plaintiff's Eighth Amendment claim.

Equal Protection

Plaintiff asserts in his complaint that defendants also violated his equal protection rights when they denied him re-treatment with pegylated interferon and ribavirin. In order to state an equal protection claim under § 1983, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Defendants Kenney and Khurshid, in their declarations in support of defendants' summary judgment motion, state that race is a medical fact which is relevant to determining the likelihood of successful re-treatment and would have been considered for that reason. (Dkt. No. 33, Ex. 2 at 8 and Ex. 3 at 3.) Defendants deny, however, considering the issue of race with any intent to discriminate against plaintiff. (*Id*.) Plaintiff makes no showing to the contrary. Accordingly, defendants are entitled to summary judgment with respect to

plaintiff's equal protection claim.

## Civil Rights of Institutionalized Persons Act

Plaintiff appears to assert in his "Statement of Claim" that defendants' actions with respect to his serious medical needs violate the Civil Rights of Institutionalized Persons Act ("CRIPA"). CRIPA authorizes the United States Attorney General to institute civil actions against states, as well as various state entities, officials, and employees, for violating the constitutional rights of individuals residing in or confined to an institution within that state. *See* 42 U.S. C. 1997a. However, CRIPA does not authorize a private right of action. *See McRorie v. Shimoda*, 795 F.2d 782 n.3 (9th cir. 1986); *Cooper v. Sumner*, 672 F. Supp. 1361, 1367 (D. Nev. 1987). Accordingly, any intended claim under CRIPA should be dismissed.

## Pendant State Law Claims

Plaintiff appears to allege in his complaint that the conduct of defendants not only violated federal law, but violated state law as well. The Supreme Court has stated that federal courts should refrain from exercising their pendent jurisdiction when the federal claims are dismissed before trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Because defendants are entitled to summary judgment with respect to each of plaintiff's federal constitutional claims, any intended state law claims should be dismissed.

## CONCLUSION

Based on the foregoing, this Court recommends that defendants' motion for summary judgment be granted. This Court further recommends that plaintiff's complaint, and this action, be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 9th day of March 2007.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge